**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bonnie Lynn Williams, | No. CV-20-01071-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Bonnie Lynn Williams seeks judicial review of the denial of her application for Social Security Disability Insurance under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 20), Defendant Commissioner of Social Security Administration's Answering Brief (Doc. 23), Plaintiff's Reply Brief (Doc. 26), and the Administrative Record (Doc. 15). Upon review, the Court reverses the Administrative Law Judge's decision (AR at 13–28)[1] and remands for further proceedings.

**I.    BACKGROUND**

Plaintiff filed a Title II application for disability insurance benefits on June 13, 2016, for a period of disability beginning on March 1, 2016 (AR 13).  Plaintiff testified at an administrative hearing on March 25, 2019 (AR at 35–62), after which the Administrative Law Judge ("ALJ") found Plaintiff was not disabled (AR at 13–28). On April 2, 2020, the

---

[1] Administrative Record (*see* Doc. 15).

Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision (AR 1–4).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: degenerative disc disease, status post cervical and lumbar fusion, syncope, renal hypertension, and chronic kidney disease (AR at 15). Ultimately, the ALJ concluded that "[Plaintiff] has not been under a disability within the meaning of the Social Security Act from March 1, 2016 through the date of this decision." (AR 13).

**II.　LEGAL STANDARD**

A person is considered "disabled" for the purpose of receiving social security benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ

follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id.* At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

### III. ANALYSIS

Plaintiff argues the ALJ erred by failing to properly consider the medical opinion of Plaintiff's treating pain management physician and rejecting Plaintiff's symptom testimony (Doc. 20 at 1–2). The Court will consider each argument in turn.

#### A. Medical Evidence

Plaintiff argues the ALJ erred in rejecting the opinion of J. Julian Grove, M.D., Plaintiff's treating pain management physician (Doc. 20 at 11–17). Although "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to

the opinion of doctors who do not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id*. (citation omitted). An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

Plaintiff argues that the ALJ erred in discrediting Dr. Grove's opinions because the treatment records did not show any worsening in Plaintiff's conditions between his March 1, 2017 and February 13, 2019 assessments (Doc. 20 at 16–17). As Plaintiff points out, it is true that "stability does not mean that plaintiff was symptom free." *Ekola v. Colvin*, No. 2:13-cv-1812-HRH, 2014 WL 4425783, at *6 (D. Ariz. Sept. 9, 2014); *see also Petty v. Astrue*, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008) ("The Court initially notes that a condition can be stable but disabling."). "[T]he fact that plaintiff was 'stable' does not mean that he was not still experiencing great pain. As one court has observed, 'doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Englehardt v. Astrue*, No. 2:10-cv-2512-HRH, 2012 WL 12878758, at *7 (D. Ariz. Mar. 21, 2021).

In responding, Defendant agues the ALJ discredited Dr. Grove's opinion *not* because Plaintiff's condition remained stable, but because despite there being no *significant* change in her conditions, Dr. Grove's opined limitations became *more restrictive* (*see* Doc. 15–3 ("Further, as to his *more restrictive limitations* in his February

2019 opinion, his treatment records show *no support of worsening condition*."). Upon a closer review, however, although there were some changes to the limitations (both more *and* less restrictive), the changes were minor and the assessments similar. The Court simply cannot find that the opined changes to her limitations were so drastic that they would require a worsening of her condition to merit any support.

Next, Plaintiff argues the ALJ erred in discrediting Dr. Grove's opinion based on alleged inconsistencies with "physical examination findings, which included no appearance of acute distress, intact psychiatric status, normal sensation, normal reflexes and normal motor strength." (AR 26) (Doc. 20 at 14–15). The Court is similarly unclear, and the ALJ does not explain, how these findings on her appointment days contradict the assessed limitations—specifically as they relate to her chronic (rather than acute) neck and lower back pain. *See Ekola*, 2014 WL 4425783, at *6 ("[I]n a medical context 'acute' means 'having a rapid onset, severe symptoms, and a short course; not chronic[.]' Plaintiff's conditions were chronic, not acute. Thus, the fact that physicians noted that she was not in acute distress is somewhat meaningless."); *Maske v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04891-PHX-DWL, 2020 WL 813768, at *5 ("Having strength in one's extremities doesn't necessarily mean, for example, that a person can sit for more than six hours in a workday."); *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014) ("The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Without more, the ALJ has failed to "set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Charter*, 157 F.3d 715, 725 (9th Cir. 1996); *Fultz v. Comm'r of Soc. Sec. Admin.*, No. CV-17-03122-PHX-DGC, 2018 WL 3439821, at *2 (D. Ariz. July 17, 2018); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("We therefore must conclude that the ALJ failed to build the requisite 'logical bridge' between the evidence and her conclusion.").

Finally, Plaintiff argues the ALJ erred in discrediting Dr. Grove's opinion as inconsistent with her report that she crocheted in her free time (AR 26; Doc. 20 at 13). A report by clinical psychologist Beverly Yoches notes that "[w]hen [Plaintiff] was asked

how she spends her free time, she replied, 'I crochet and have a little dog. I try to do stuff in my sewing room." (AR 633). At the hearing, when asked about whether she has any difficulty using her hands, Plaintiff responded that "[t]hey actually go numb from my neck and so I can only use them for a short period of time without resting them. I do try to crochet to keep my fingers from stiffening up but they go numb." (AR 41–42). Again, the Court is unclear how using her hands and attempting to crochet to "keep her fingers from going numb" for "short period[s] of time" is inconsistent with Dr. Grove's opinion that she could "occasionally" use her hands for fine manipulation and handling (*see* AR 713, 923).[2]

Thus, based on the foregoing, the Court finds the ALJ provided insufficient reasons for rejecting Dr. Grove's medical opinions.

### B.     Plaintiff's Symptom Testimony

Plaintiff also argues the ALJ erred in rejecting her symptom testimony (Doc. 20 at 17–22). An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citation omitted). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "[Plaintiff's] medically determinable impairments could

---

[2] The medical assessments define "occasionally" as 1% to 33% of an 8-hour workday (AR 713, 923).

reasonably be expected to cause the alleged symptoms," (AR 20), "[h]owever, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR at 21).

Plaintiff argues the ALJ erred in rejecting her symptom testimony based entirely on inconsistency with the medical evidence (Doc. 20 at 18–22). First, the Court notes it is difficult to assess the exact evidence the ALJ relied on to specifically reject Plaintiff's symptom testimony as the decision immediately "drifts into a discussion of the medical evidence" and the Court must sift through the discussion and attempt to assess which sections specifically relate to the subjective testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014); *Nelson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08027-PCT-JZB, 2020 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020) ("Indeed, this Court has repeatedly rejected ALJ rationale that discussed medical evidence but provided no connection between that discussion and rejection of claimant's symptom testimony."). Regardless, the Court will address those sections discussed by the parties.

Defendant argues that in addition to objective medical support, the ALJ relied on "other evidence" to reject Plaintiff's subjective testimony, including positive responses to treatment and daily activities (Doc. 23 at 6–8). With respect to the citations in the decision stating that Plaintiff "dramatically improved" following certain treatments, there is also nothing in the record to indicate that such improvement was either permanent or equated to an ability to work. Although she noted improvement post cervical spine surgery and with the use of medications (*see, e.g.*, AR 927, 929, 1061), the record is also replete with evidence that she continued to report chronic pain (*see, e.g.*, AR 848, 1047, 1059, 1060). Findings that Plaintiff experienced brief respites from pain does not negate concurrent medical findings of persistent, chronic, or worsening pain.

With respect to her daily activities, Defendant argues her ability to crochet in her free time illustrated a greater functionality than alleged with regard to manipulative limitations (Doc. 23 at 7). As this Court has already discussed, however, it is unclear how

using her hands and attempting to crochet to "keep her fingers from going numb" for "short period[s] of time" is inconsistent with Dr. Grove's opinion that she could "occasionally" use her hands for fine manipulation and handling (*see* AR 713, 923).

Finally, to the extent the ALJ concluded that Plaintiff's allegations regarding the severity of her pain were not supported by the medical evidence of record, this reason alone cannot suffice. The Ninth Circuit has held that "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (emphasis added). This rule recognizes that "pain is a subjective phenomenon," and it "cannot be objectively verified or measured." *Id*. (citation omitted). Accordingly, the Court finds that the ALJ erred in rejecting Plaintiff's symptom testimony.

## IV. CONCLUSION

It is in this Court's discretion to reverse and remand for an award of benefits or further proceedings. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Despite the Court's ruling and the deficiencies in the ALJ's decision, because the record contains conflicting evidence, the Court will remand for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (noting "[t]he rare circumstances" for an award of benefits is present "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

///
///
///
///
///
///
///

- 8 -

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 29th day of September, 2021.

Honorable Steven P. Logan
United States District Judge